UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Stacey Darlene Poole,<br><br>PLAINTIFF<br><br>v.<br><br>Black, Slaughter & Black, P.A.,<br><br>DEFENDANT | Case No. 0:20-cv-03499-TLW<br><br><br>**Order** |

This matter is before the Court on the parties' cross-motions for summary judgment. Because Plaintiff Stacey Darlene Poole has not suffered a concrete injury, her case will be dismissed for lack of standing.

## I.     Factual and Procedural History

This case arises from a dispute between a condo-owner—Poole—and her homeowners association (HOA). She concluded that the HOA was not properly maintaining its part of the condo, so she ceased paying her HOA dues. *See* ECF No. 8 at ¶ 11. That prompted the HOA to retain David Wilson, an attorney employed by Defendant Black, Slaughter & Black, P.A. (the Firm), to collect the unpaid dues. *See id.* at ¶ 12.

The Firm filed a foreclosure action in state court on the HOA's behalf, prompting an answer and counterclaim from Poole through her counsel, Brian Gambrell. *Id.* at ¶¶ 13–15. The Firm, under Wilson's signature, mailed a hearing notice directly to Poole, even though they were aware she was represented by

Gambrell. *Id.* at ¶¶ 16, 18; ECF No. 8-1 at 1–3. And even though they knew she had filed an answer and counterclaim, the notice said, "this case is being treated as an uncontested matter based on your failure to plead or to otherwise respond as required by law." ECF No. 8-1 at 2. The notice also said that if she planned to appear and contest the hearing, she—not her counsel—should contact Wilson directly. *Id.* Although she knew that an answer had been filed in her case, she alleges that receiving this notice caused her to become "extremely upset because she thought her case had been dropped by [Gambrell] and that she was now faced with the prospect of losing her home because the foreclosure was now uncontested." ECF No. 8 at ¶ 21.

After receiving the notice, Poole contacted Gambrell, who ensured her that the case had not been dropped. He then emailed Wilson, admonishing him for contacting Poole directly. ECF No. 8-2. Wilson apologized, saying that the notice was sent inadvertently. ECF No. 8-3.

A few days after the apology email, the Firm, again under Wilson's signature, mailed an amended hearing notice directly to Poole. ECF No. 8 at ¶ 24. This notice also contained the language about the hearing being treated as uncontested and that she should contact Wilson.[1] *Id.* But this time, she knew it was coming. Gambrell received an electronic notification when the hearing notice was filed and informed her about it before it arrived in her mailbox, so she "was not surprised when the

---

[1] Wilson submitted an affidavit explaining that this happened because of his paralegal's inadvertence. He says he revised the second notice to remove the offending language and address, but that she filed and mailed the pre-revision version instead. ECF No. 31-6 at 2.

second notice showed up." Gambrell Dep. 91:5–6.

Despite Poole's counsel telling her ahead of time that another notice was sent to her, she alleges that this second notice also caused her to "[become] upset because she was unsure whether her claim was being properly defended thereby creating uncertainty between [her] and [Gambrell]." ECF No. 8 at ¶ 28. She further alleges that, because of this notice, she "suffered upset, fright, worry, and mental anguish at the prospect of being in default additional attorneys' fees and costs in her underlying debt collection suit, and having her home taken in an uncontested hearing." *Id.* at ¶ 29.

As a result of these notices, Poole moved for sanctions in the foreclosure case and then filed this federal action, alleging violations of the Fair Debt Collection Practices Act (FDCPA) and South Carolina Unfair Trade Practices Act (SCUTPA). After the Court denied the Firm's Rule 12 motion to dismiss, ECF No. 21, the Firm filed an answer admitting that it knew she was represented by counsel, that it knew she was contesting the foreclosure, and that it mailed the notices directly to her, *see* ECF No. 8 at ¶¶ 16–18, 24; ECF No. 23 at ¶¶ 8–9, 14. After discovery, the parties filed cross-motions for summary judgment.

Poole seeks partial summary judgment as to liability on the FDCPA claim, arguing that the notices were "communications" as defined by the FDCPA and that the notices were material to debt collection activity. *See* ECF No. 30 at 5, 7. The Firm responded in opposition, disagreeing that the notices were communications and disagreeing that they were material. *See* ECF No. 34 at 1, 6.

3

The Firm seeks summary judgment and dismissal of the whole case. As to the FDCPA claim, the Firm argues that the notices were neither communications nor material, and that any violation was the result of bona fide error. ECF No. 31 at 7, 12, 14. The Firm also argues that she lacks standing to bring the FDCPA claim. *Id.* at 9. Then as to the SCUTPA claim, the Firm argues that she cannot sustain that claim because she did not suffer a monetary or property loss. *Id.* at 15.

Poole submitted a response conceding that the Firm is entitled to summary judgment on the SCUTPA claim, but opposing summary judgment on the FDCPA claim. *See* ECF No. 33 at 1. As to that claim, she argues that the Firm did not provide any evidence to support its bona fide error defense, that she was upset and anxious as a result of receiving the notices, and that "even absent actual damages, a prevailing plaintiff in a [FDCPA] case is entitled to a statutory penalty and attorney's fees."[2] *Id.* at 2. She did not specifically address the Firm's standing argument.

The Court now turns to the foundational issue that ultimately decides the outcome of this case: standing.

## II. Analysis

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual

---

[2] In her response, she stated that "Gambrell testified in his deposition that [she] was upset and anxious as a result of receiving the false and misleading hearing notices from the [Firm]." ECF No. 33 at 2. Upon review of the deposition transcript, the Court has not located a specific statement by Gambrell that Poole was upset or anxious as a result of receiving the notices. *See* ECF No. 30-1 at 119–143 (deposition index).

4

cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Hence the doctrine of standing, which exists "to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To have standing, a plaintiff must establish three elements: (1) she "suffered an injury in fact"; (2) the injury is "fairly traceable to the challenged conduct of the defendant"; and (3) the injury is "likely to be redressed by a favorable judicial decision." *Id.*

Importantly here, "[i]njury in fact is a constitutional requirement, and it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 339 (cleaned up). An injury in fact must be "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* As the Supreme Court succinctly put it: "[n]o concrete harm, no standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021).

For an injury to be concrete, "it must actually exist." *Spokeo*, 578 U.S. at 340. That does not, however, mean that an injury must be tangible. *Id.* An intangible injury can be concrete, such as in the context of free speech or free exercise violations. *Id.* (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) (free speech); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) (free exercise)). And while Congress has an important role to play in identifying intangible harms via statute, that "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to

5

authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341. Hence, "a bare procedural violation, divorced from any concrete harm," cannot satisfy Article III's standing requirement. *Id.*

Several circuits—though not the Fourth—have issued published opinions applying *Spokeo* in the context of the FDCPA and similar statutes in cases involving allegations similar to Poole's.

For example, the Eleventh Circuit found that FDCPA plaintiffs lacked standing to sue based on collection letters they received about time-barred debt where the letters were misleading, but did not result in them actually being misled. *See Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1005 (11th Cir. 2020).

Likewise, the Sixth Circuit found that a FDCPA plaintiff lacked standing to sue based on a debt collector's voicemails where the debt collector did not provide its full name or state that the voicemails were communications from a debt collector, but the plaintiff's only asserted damage was that his counsel mailed a cease-and-desist letter to the wrong entity. *See Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 363 (6th Cir. 2021).

A few months ago, the Second Circuit relied on the same logic to conclude that former homeowners lacked standing to sue a bank for the bank's failure to file a satisfaction of mortgage within thirty days of the sale of their house, as required by state law, where they did not suffer an actual injury. *See Maddox v. Bank of N.Y. Mellon Trust Co.*, 19 F.4th 58, 66 (2d Cir. 2021). Particularly noteworthy in *Maddox*

6

was the Second Circuit's observation that the plaintiffs offered no explanation of why the delayed filing would cause their asserted emotional distress and that "[a] perfunctory allegation of emotional distress, especially one wholly incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing." *Id.*

All three of these cases provide important guidance, but *Maddox*'s logic is most directly relevant here. In this case, Poole alleges that her direct receipt of the first notice caused her to become "extremely upset because she thought her case had been dropped by [Gambrell] and that she was now faced with the prospect of losing her home because the foreclosure was now uncontested." ECF No. 8 at ¶ 21. But her fears were quickly assuaged through a simple conversation with Gambrell, which would be expected given that she knew an answer and counterclaim had been filed.

As to the second notice, Poole alleges that this notice caused her to "[become] upset because she was unsure whether her claim was being properly defended thereby creating uncertainty between [her] and [Gambrell]." ECF No. 8 at ¶ 28. Additionally, she alleges that because of this notice, she "suffered upset, fright, worry, and mental anguish at the prospect of being in default additional attorneys' fees and costs in her underlying debt collection suit, and having her home taken in an uncontested hearing." *Id.* at ¶ 29. But those assertions must be considered alongside the fact that she "was not surprised when the second notice showed up" because Gambrell had warned her about it ahead of time. Gambrell Dep. 91:5–6.

Notably, Poole does not allege that these notices affected her legal position in the foreclosure case in any way, aside from providing her with a basis to file a motion

7

for sanctions against the Firm. Nor does she allege that she took any action of any sort regarding these notices other than telling Gambrell about them. In fact, she has not offered any evidence at all of her alleged damages—whether by deposition, affidavit, or otherwise—as is required at the summary judgment stage.[3] *See, e.g.*, *Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243, 252 (4th Cir. 2018) ("Although we view the evidence in the light most favorable to the nonmoving party, that party must produce evidence that goes beyond conclusory or speculative allegations and relies on more than a mere scintilla of evidence to withstand summary judgment." (citation omitted)). She does not offer evidence that she sought medical or psychological care, that she took over-the-counter medication, that she could not sleep, or that she could not carry on with her normal routine because of her alleged distress. In that context, the Second Circuit's statement that "[a] perfunctory allegation of emotional distress, especially one wholly incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing," is particularly appropriate. *Maddox*, 19 F.4th at 66.

Poole cites two pre-*Spokeo* cases for the proposition that emotional damages alone are recoverable under the FDCPA: *Ford Motor Credit Corp. v. Sheehan*, 373 So. 2d 956 (Fla. Dist. Ct. App. 1979) and *In re Maxwell*, 281 B.R. 101 (Bankr. D. Mass 2002). But *Sheehan* is a state—not federal—case involving state—not federal—law, and thus is not relevant to the issue here—standing under the federal constitution.

---

[3] Her allegations were sufficient to survive a Rule 12 motion, but summary judgment is analyzed based on the discovery evidence, not the complaint's allegations.

Likewise, *Maxwell* states that emotional distress is recoverable under the FDCPA, but like *Sheehan*, *Maxwell* is not a federal standing case and does not hold that emotional distress alone supports standing. Furthermore, as noted above, Poole has not provided any actual evidence that she suffered emotional distress and instead simply relies on the allegations in her complaint.

The Court concludes that although the notices were improperly sent to Poole, the facts of record do not support a conclusion that the Firm's conduct caused her to suffer an injury in fact. *See Spokeo*, 578 U.S. at 339. The standing doctrine requires that a plaintiff suffer "an invasion of a legally protected interest that is concrete and particularized and actual or imminent." *Id.* The facts of record simply do not meet this standard. The factual record does not lead the Court to conclude that there has been proof of an injury that is concrete, particular, actual, or imminent. She may have been temporarily confused when she received the first notice, but that does not in itself establish a concrete injury of emotional distress. More is required. Then she was told by counsel that she would receive a second notice, which she did. However, being told by counsel that she would receive it undermines her claim that her eventual receipt of it caused actionable harm.

Considering the evidence of record in the light most favorable to Poole, the evidence simply does not establish that she suffered any injury in fact and her assertion to the contrary is not enough to establish standing. Thus, she has failed to establish that she suffered an injury that "actually exist[s]." *Id.* at 340. And as the Supreme Court stated, "[n]o concrete harm, no standing." *TransUnion*, 141 S. Ct. at

2200. Accordingly, her case will be dismissed.

## III. Conclusion

For the reasons stated, the Firm's motion for summary judgment, ECF No. 31, is **GRANTED** as to its standing argument.[4] Poole's motion for partial summary judgment, ECF No. 30, is **DENIED**. This action is **DISMISSED**.[5]

**IT IS SO ORDERED**.

<u>s/ Terry L. Wooten</u><br>
Terry L. Wooten<br>
Senior United States District Judge

April 12, 2022
Columbia, South Carolina

---

[4] Due to Poole's lack of standing, the Court does not have subject matter jurisdiction over this case, so the Court declines to rule on the other arguments raised in the motion.

[5] In light of this ruling, Poole's motion for an extension of time to file responses to the Firm's requests for admission, ECF No. 32, is terminated as **MOOT**.