LAW OFFICES

# COPELAND, STAIR, VALZ & LOVELL, LLP

**DOUGLAS W. MACKELCAN**
Partner
**MICHAEL C. MASCIALE**

**DIRECT DIAL NUMBERS**
(843) 266-8228
(843) 266-8223

**E-MAIL ADDRESSES**
dmackelcan@csvl.law
mmasciale@csvl.law

**40 Calhoun Street, Suite 400**
**CHARLESTON, SC 29401**

**TELEPHONE  (843) 727-0307**

FAX (843) 727-2995

www.csvl.law

**ATLANTA OFFICE**

191 Peachtree Street, N.E.
Suite 3600
Atlanta, Georgia  30303-1740
**(404) 522-8220**

**REPLY TO SC OFFICE**



**MAY 16 2022**

**LEGAL DIVISION**
**SCDOT**

May 13, 2022

**VIA UNITED STATES MAIL**
Brian C. Gambrell, Esq.
S.C. Dept. of Transportation, Room 302
P.O. Box 191
Columbia, SC 29202

> Re:   Stacey Darlene Poole v. Black, Slaughter & Black, P.A.
>        Case No.: 0:20-3499-TLW
>        CSVL File No.: 5147-61364

Dear Brian:

As you may recall, you represented Ms. Poole in the above captioned matter until Drew Radeker was substituted as counsel of record for you on February 9, 2021. On April 12, 2022, the Court Granted Defendant's Motion for Summary Judgment (Doc # 40 – attached) and dismissed this case with prejudice. Among other things, the Court found there was no factual basis to confer standing on Ms. Poole or to support a valid claim for damages in this case.  On April 27, 2022, based on the Court's findings, Defendants filed a Motion for Attorneys' Fees and Costs (Doc #42 – also attached).  I wanted to provide you a copy of the motion so that you are aware our client has authorized and instructed us to seek recovery of our fees and costs from all parties involved in the unreasonable filing and continuation of this lawsuit.

Once the Court sets a hearing on our motion, we will inform you of the date and time. Alternatively, the Court may decide the motion on written briefs alone.  I wanted to notify you of that possibility so that you have the opportunity to respond to our motion via written brief if you so choose.

In the meantime, please do not hesitate to contact me if you have any questions or would like to discuss this matter further.

Sincerely,

*s/ Michael Masciale*
DOUGLAS W. MACKELCAN
MICHAEL C. MASCIALE

MCM:tjr

Enclosures:     Order Granting Defendant's Motion for Summary Judgment
                 Defendant's Motion for Attorney's Fees & Costs
                 Certificate of Service

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | |
|---|---|
| Stacey Darlene Poole, | Case No. 0:20-cv-03499-TLW |
| PLAINTIFF | |
| v. | Order |
| Black, Slaughter & Black, P.A., | |
| DEFENDANT | |

This matter is before the Court on the parties' cross-motions for summary judgment. Because Plaintiff Stacey Darlene Poole has not suffered a concrete injury, her case will be dismissed for lack of standing.

## I.     Factual and Procedural History

This case arises from a dispute between a condo-owner—Poole—and her homeowners association (HOA). She concluded that the HOA was not properly maintaining its part of the condo, so she ceased paying her HOA dues. *See* ECF No. 8 at ¶ 11. That prompted the HOA to retain David Wilson, an attorney employed by Defendant Black, Slaughter & Black, P.A. (the Firm), to collect the unpaid dues. *See id.* at ¶ 12.

The Firm filed a foreclosure action in state court on the HOA's behalf, prompting an answer and counterclaim from Poole through her counsel, Brian Gambrell. *Id.* at ¶¶ 13–15. The Firm, under Wilson's signature, mailed a hearing notice directly to Poole, even though they were aware she was represented by

1

Gambrell. *Id.* at ¶¶ 16, 18; ECF No. 8-1 at 1–3. And even though they knew she had filed an answer and counterclaim, the notice said, "this case is being treated as an uncontested matter based on your failure to plead or to otherwise respond as required by law." ECF No. 8-1 at 2. The notice also said that if she planned to appear and contest the hearing, she—not her counsel—should contact Wilson directly. *Id.* Although she knew that an answer had been filed in her case, she alleges that receiving this notice caused her to become "extremely upset because she thought her case had been dropped by [Gambrell] and that she was now faced with the prospect of losing her home because the foreclosure was now uncontested." ECF No. 8 at ¶ 21.

After receiving the notice, Poole contacted Gambrell, who ensured her that the case had not been dropped. He then emailed Wilson, admonishing him for contacting Poole directly. ECF No. 8-2. Wilson apologized, saying that the notice was sent inadvertently. ECF No. 8-3.

A few days after the apology email, the Firm, again under Wilson's signature, mailed an amended hearing notice directly to Poole. ECF No. 8 at ¶ 24. This notice also contained the language about the hearing being treated as uncontested and that she should contact Wilson.[1] *Id.* But this time, she knew it was coming. Gambrell received an electronic notification when the hearing notice was filed and informed her about it before it arrived in her mailbox, so she "was not surprised when the

---

[1] Wilson submitted an affidavit explaining that this happened because of his paralegal's inadvertence. He says he revised the second notice to remove the offending language and address, but that she filed and mailed the pre-revision version instead. ECF No. 31-6 at 2.

second notice showed up." Gambrell Dep. 91:5–6.

Despite Poole's counsel telling her ahead of time that another notice was sent to her, she alleges that this second notice also caused her to "[become] upset because she was unsure whether her claim was being properly defended thereby creating uncertainty between [her] and [Gambrell]." ECF No. 8 at ¶ 28. She further alleges that, because of this notice, she "suffered upset, fright, worry, and mental anguish at the prospect of being in default additional attorneys' fees and costs in her underlying debt collection suit, and having her home taken in an uncontested hearing." *Id.* at ¶ 29.

As a result of these notices, Poole moved for sanctions in the foreclosure case and then filed this federal action, alleging violations of the Fair Debt Collection Practices Act (FDCPA) and South Carolina Unfair Trade Practices Act (SCUTPA). After the Court denied the Firm's Rule 12 motion to dismiss, ECF No. 21, the Firm filed an answer admitting that it knew she was represented by counsel, that it knew she was contesting the foreclosure, and that it mailed the notices directly to her, *see* ECF No. 8 at ¶¶ 16–18, 24; ECF No. 23 at ¶¶ 8–9, 14. After discovery, the parties filed cross-motions for summary judgment.

Poole seeks partial summary judgment as to liability on the FDCPA claim, arguing that the notices were "communications" as defined by the FDCPA and that the notices were material to debt collection activity. *See* ECF No. 30 at 5, 7. The Firm responded in opposition, disagreeing that the notices were communications and disagreeing that they were material. *See* ECF No. 34 at 1, 6.

3

The Firm seeks summary judgment and dismissal of the whole case. As to the FDCPA claim, the Firm argues that the notices were neither communications nor material, and that any violation was the result of bona fide error. ECF No. 31 at 7, 12, 14. The Firm also argues that she lacks standing to bring the FDCPA claim. *Id.* at 9. Then as to the SCUTPA claim, the Firm argues that she cannot sustain that claim because she did not suffer a monetary or property loss. *Id.* at 15.

Poole submitted a response conceding that the Firm is entitled to summary judgment on the SCUTPA claim, but opposing summary judgment on the FDCPA claim. *See* ECF No. 33 at 1. As to that claim, she argues that the Firm did not provide any evidence to support its bona fide error defense, that she was upset and anxious as a result of receiving the notices, and that "even absent actual damages, a prevailing plaintiff in a [FDCPA] case is entitled to a statutory penalty and attorney's fees."[2] *Id.* at 2. She did not specifically address the Firm's standing argument.

The Court now turns to the foundational issue that ultimately decides the outcome of this case: standing.

## II.    Analysis

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual

---

[2] In her response, she stated that "Gambrell testified in his deposition that [she] was upset and anxious as a result of receiving the false and misleading hearing notices from the [Firm]." ECF No. 33 at 2. Upon review of the deposition transcript, the Court has not located a specific statement by Gambrell that Poole was upset or anxious as a result of receiving the notices. *See* ECF No. 30-1 at 119–143 (deposition index).

4

cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Hence the doctrine of standing, which exists "to ensure that federal courts do not exceed their authority as it has been traditionally understood." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To have standing, a plaintiff must establish three elements: (1) she "suffered an injury in fact"; (2) the injury is "fairly traceable to the challenged conduct of the defendant"; and (3) the injury is "likely to be redressed by a favorable judicial decision." *Id.*

Importantly here, "[i]njury in fact is a constitutional requirement, and it is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." *Id.* at 339 (cleaned up). An injury in fact must be "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* As the Supreme Court succinctly put it: "[n]o concrete harm, no standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021).

For an injury to be concrete, "it must actually exist." *Spokeo*, 578 U.S. at 340. That does not, however, mean that an injury must be tangible. *Id.* An intangible injury can be concrete, such as in the context of free speech or free exercise violations. *Id.* (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009) (free speech); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) (free exercise)). And while Congress has an important role to play in identifying intangible harms via statute, that "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to

authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 341. Hence, "a bare procedural violation, divorced from any concrete harm," cannot satisfy Article III's standing requirement. *Id.*

Several circuits—though not the Fourth—have issued published opinions applying *Spokeo* in the context of the FDCPA and similar statutes in cases involving allegations similar to Poole's.

For example, the Eleventh Circuit found that FDCPA plaintiffs lacked standing to sue based on collection letters they received about time-barred debt where the letters were misleading, but did not result in them actually being misled. *See Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1005 (11th Cir. 2020).

Likewise, the Sixth Circuit found that a FDCPA plaintiff lacked standing to sue based on a debt collector's voicemails where the debt collector did not provide its full name or state that the voicemails were communications from a debt collector, but the plaintiff's only asserted damage was that his counsel mailed a cease-and-desist letter to the wrong entity. *See Ward v. Nat'l Patient Acct. Servs. Sols., Inc.*, 9 F.4th 357, 363 (6th Cir. 2021).

A few months ago, the Second Circuit relied on the same logic to conclude that former homeowners lacked standing to sue a bank for the bank's failure to file a satisfaction of mortgage within thirty days of the sale of their house, as required by state law, where they did not suffer an actual injury. *See Maddox v. Bank of N.Y. Mellon Trust Co.*, 19 F.4th 58, 66 (2d Cir. 2021). Particularly noteworthy in *Maddox*

6

was the Second Circuit's observation that the plaintiffs offered no explanation of why the delayed filing would cause their asserted emotional distress and that "[a] perfunctory allegation of emotional distress, especially one wholly incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing." *Id.*

All three of these cases provide important guidance, but *Maddox*'s logic is most directly relevant here. In this case, Poole alleges that her direct receipt of the first notice caused her to become "extremely upset because she thought her case had been dropped by [Gambrell] and that she was now faced with the prospect of losing her home because the foreclosure was now uncontested." ECF No. 8 at ¶ 21. But her fears were quickly assuaged through a simple conversation with Gambrell, which would be expected given that she knew an answer and counterclaim had been filed.

As to the second notice, Poole alleges that this notice caused her to "[become] upset because she was unsure whether her claim was being properly defended thereby creating uncertainty between [her] and [Gambrell]." ECF No. 8 at ¶ 28. Additionally, she alleges that because of this notice, she "suffered upset, fright, worry, and mental anguish at the prospect of being in default additional attorneys' fees and costs in her underlying debt collection suit, and having her home taken in an uncontested hearing." *Id.* at ¶ 29. But those assertions must be considered alongside the fact that she "was not surprised when the second notice showed up" because Gambrell had warned her about it ahead of time. Gambrell Dep. 91:5–6.

Notably, Poole does not allege that these notices affected her legal position in the foreclosure case in any way, aside from providing her with a basis to file a motion

for sanctions against the Firm. Nor does she allege that she took any action of any sort regarding these notices other than telling Gambrell about them. In fact, she has not offered any evidence at all of her alleged damages—whether by deposition, affidavit, or otherwise—as is required at the summary judgment stage.[3] *See, e.g.,* *Hodgin v. UTC Fire & Sec. Americas Corp.,* 885 F.3d 243, 252 (4th Cir. 2018) ("Although we view the evidence in the light most favorable to the nonmoving party, that party must produce evidence that goes beyond conclusory or speculative allegations and relies on more than a mere scintilla of evidence to withstand summary judgment." (citation omitted)). She does not offer evidence that she sought medical or psychological care, that she took over-the-counter medication, that she could not sleep, or that she could not carry on with her normal routine because of her alleged distress. In that context, the Second Circuit's statement that "[a] perfunctory allegation of emotional distress, especially one wholly incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing," is particularly appropriate. *Maddox,* 19 F.4th at 66.

Poole cites two pre-*Spokeo* cases for the proposition that emotional damages alone are recoverable under the FDCPA: *Ford Motor Credit Corp. v. Sheehan,* 373 So. 2d 956 (Fla. Dist. Ct. App. 1979) and *In re Maxwell,* 281 B.R. 101 (Bankr. D. Mass 2002). But *Sheehan* is a state—not federal—case involving state—not federal—law, and thus is not relevant to the issue here—standing under the federal constitution.

---

[3] Her allegations were sufficient to survive a Rule 12 motion, but summary judgment is analyzed based on the discovery evidence, not the complaint's allegations.

8

Likewise, *Maxwell* states that emotional distress is recoverable under the FDCPA, but like *Sheehan*, *Maxwell* is not a federal standing case and does not hold that emotional distress alone supports standing. Furthermore, as noted above, Poole has not provided any actual evidence that she suffered emotional distress and instead simply relies on the allegations in her complaint.

The Court concludes that although the notices were improperly sent to Poole, the facts of record do not support a conclusion that the Firm's conduct caused her to suffer an injury in fact. *See Spokeo*, 578 U.S. at 339. The standing doctrine requires that a plaintiff suffer "an invasion of a legally protected interest that is concrete and particularized and actual or imminent." *Id.* The facts of record simply do not meet this standard. The factual record does not lead the Court to conclude that there has been proof of an injury that is concrete, particular, actual, or imminent. She may have been temporarily confused when she received the first notice, but that does not in itself establish a concrete injury of emotional distress. More is required. Then she was told by counsel that she would receive a second notice, which she did. However, being told by counsel that she would receive it undermines her claim that her eventual receipt of it caused actionable harm.

Considering the evidence of record in the light most favorable to Poole, the evidence simply does not establish that she suffered any injury in fact and her assertion to the contrary is not enough to establish standing. Thus, she has failed to establish that she suffered an injury that "actually exist[s]." *Id.* at 340. And as the Supreme Court stated, "[n]o concrete harm, no standing." *TransUnion*, 141 S. Ct. at

2200. Accordingly, her case will be dismissed.

## III. Conclusion

For the reasons stated, the Firm's motion for summary judgment, ECF No. 31, is **GRANTED** as to its standing argument.[4] Poole's motion for partial summary judgment, ECF No. 30, is **DENIED**. This action is **DISMISSED**.[5]

    **IT IS SO ORDERED.**

*s/ Terry L. Wooten*
Terry L. Wooten
Senior United States District Judge

April 12, 2022
Columbia, South Carolina

---

[4] Due to Poole's lack of standing, the Court does not have subject matter jurisdiction over this case, so the Court declines to rule on the other arguments raised in the motion.

[5] In light of this ruling, Poole's motion for an extension of time to file responses to the Firm's requests for admission, ECF No. 32, is terminated as **MOOT**.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

Stacey Darlene Poole,                              ) Case No.: 0:20-cv-3499-TLW
                                                   )
                    Plaintiff,                     )
                                                   )
v.                                                 )     **CERTIFICATE OF SERVICE**
                                                   )
Black, Slaughter & Black, P.A.,                    )
                                                   )
                    Defendant.                     )

I hereby certify that I have this day served a copy of the filed *Order granting Defendants'*
*Motion for Summary Judgment* (Dkt. #40); and *Defendant's Motion for Attorneys' Fees and*
*Costs* (Dkt. #42) in this matter, upon the party below, regular U.S. Mail, proper postage prepaid,
addressed as follows (see attached <u>Exhibit A</u> - Transmittal letter with enclosures).

> Brian C. Gambrell, Esq.
> S.C. Dept. of Transportation, Room 302
> P.O. Box 191
> Columbia, SC 29202

This 13th day of May, 2022.

> *s/Michael C. Masciale*
> MICHAEL C. MASCIALE
> Federal Bar No.: 12944
> *Counsel for Defendants*

Copeland, Stair, Valz & Lovell, LLP
40 Calhoun Street, Suite 400
Charleston, SC 29401
Ph: (843) 727-0307

6812797.1

LAW OFFICES

# COPELAND, STAIR, KINGMA & LOVELL, LLP

EXHIBIT
A

DOUGLAS W. MACKELCAN
Partner
MICHAEL C. MASCIALE

DIRECT DIAL NUMBERS
(843) 266-8228
(843) 266-8223

E-MAIL ADDRESSES
dmackelcan@cskl.law
mmasciale@cskl.law

40 Calhoun Street, Suite 400
CHARLESTON, SC 29401
TELEPHONE (843) 727-0307

FAX (843) 727-2995

www.cskl.law

ATLANTA OFFICE
191 Peachtree Street, N.E.
Suite 3600
Atlanta, Georgia 30303-1740
(404) 522-8220

REPLY TO SC OFFICE

November 9, 2021

**VIA EMAIL**
Andrew S. Radeker, Esq.
Harrison, Radeker & Smith, P.A.
P.O. Box 50143
Columbia, SC 29250
drew@harrisonfirm.com

**CONFIDENTIAL SETTLEMENT COMMUNICATION
INADMISSIBLE PURSUANT TO RULE 408, FRE**

Re:     Stacey Darlene Poole v. Black, Slaughter & Black, P.A.
        Case No.: 0:20-3499-TLW
        CSKL File No.: 5147-61364

Dear Drew:

As you know, we took the deposition of your client's former counsel, Brian Gambrell, last week. I believe the deposition was largely supportive of my client's position that the statements made in the Notices of Hearing inadvertently sent to Ms. Poole were not material and did not mislead her, and that she did not suffer any damages as a result of receiving them. It is clear from Mr. Gambrell's testimony that very soon after receiving the September 9, 2020 Notice of Hearing, Ms. Poole was informed that the statements made therein were false, that the notice had been mistakenly sent to her, and that her case was in fact being contested.

Further, Mr. Gambrell gave Ms. Poole advance notice of the inadvertently-sent September 18, 2020 Notice of Hearing—which was almost identical to the September 9 Notice of Hearing—and she was not surprised when she received it in the mail. This again goes to show: (1) that Ms. Poole was not misled by any of the statements contained in the Notices of Hearing because she knew they were false; and (2) that she was not damaged as a result of receiving them.

Moreover, Mr. Gambrell testified that, other than the two aforementioned Notices of Hearing, Black, Slaughter & Black always communicated directly with his office during the underlying HOA foreclosure action. This testimony, along with the affidavits of David Wilson and Leeann Simpson attached to our Motion to Dismiss, provides strong support for my client's defense that the mailing of the Notices of Hearing directly to Ms. Poole was unintentional and the result of a bona fide error. Additionally, as you know, the HOA filed a motion for summary judgment in the underlying action based largely on admissions resulting from Ms. Poole's failure to respond to Requests to Admit served on Mr. Gambrell, and the court ultimately granted the motion as to Ms. Poole's liability. Rather than conducting discovery and attempting to elicit competent evidence to survive summary judgment on this issue, Mr. Gambrell filed a motion for sanctions in the foreclosure case and filed this action in Federal Court against Black, Slaughter & Black.

Based on the foregoing, this action likely should not have been filed. The apparent lack of damages suffered by your client as a result of her receipt of the Notices of Hearing—combined with the disadvantage at which she found herself in the foreclosure action due to her failure to respond to the Requests to Admit—suggests this action may not have been brought for a proper purpose under the FDCPA.

Further, by failing to timely respond to the Requests for Admission we served on you on August 27, 2021, your client has admitted many material facts which defeat her claims and support my client's defenses in this action. On October 25, 2021, pursuant to Rule 11, FRCP, I sent you a letter regarding your client's failure to respond to our first discovery requests, including the Requests for Admission. To date, we still have not received any responses from your client. Accordingly, we intend to move for summary judgment in the near future based on your client's admissions, Mr. Gambrell's testimony, and the other evidence in this case.

While my client is confident in its position, in a good faith effort to resolve this matter before the parties are forced to incur additional costs in further litigation, my client has authorized me to extend to Ms. Poole an offer of ███████████████ in exchange for a full and final settlement of this case, including a full release of any claims or matters relating hereto. This settlement offer will expire and be withdrawn if I do not receive a written notice of acceptance from you by the ***end of business on Monday November 15, 2021***.

In the event I do not receive a response by then, or your client rejects the settlement offer, my client has instructed me to proceed with filing a motion for summary judgment. Further, if we are required to go forward with litigation and are successful, my client is seriously considering taking action to recover its fees and costs incurred in the defense of this action. This may include, but is not limited to, sanctions pursuant to Rule 11, FRCP and the South Carolina Frivolous Civil Proceedings Sanctions Act, as well as fees and costs recoverable under 15 U.S.C. § 1692k(a)(3).

6691328v.1

Please let me know if you have any questions or would like to discuss this case and my client's settlement offer further. Otherwise, I look forward to receiving your client's response by the end of business on Monday November 15, 2021.

Sincerely,

*s/ Michael C. Masciale*

DOUGLAS W. MACKELCAN
MICHAEL C. MASCIALE

MCM:dw

cc (via email):     Rhonda Schaub
              Doug MacKelcan
              Desja Wilder

6691328v.1



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Stacey Darlene Poole, | ) | Case No.: 0:20-cv-3499-TLW |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **DEFENDANT'S MOTION FOR** |
| | ) | **ATTORNEYS' FEES AND COSTS** |
| Black, Slaughter & Black, P.A., | ) | |
| | ) | |
| Defendant. | ) | |

YOU WILL PLEASE TAKE NOTICE that on the 14th day after service hereof, or as soon

thereafter as counsel may be heard, Defendant Black, Slaughter & Black, P.A. ("Defendant"), by

and through its undersigned counsel, will move and hereby does move before this Honorable Court

for an Order awarding Defendant its attorneys' fees and costs incurred in the defense of this action.

In support of this Motion, Defendant would respectfully show the Court as follows:

1.      This action arises from Plaintiff's receipt of two Notices of Hearing inadvertently

sent to her by Defendant in a state law homeowners association assessment foreclosure action.[1]

2.      Plaintiff filed this action on October 2, 2020.  On October 30, 2020, Plaintiff filed

an Amended Complaint, which alleged Plaintiff suffered mental and emotional distress as a result

of receiving the Notices of Hearing and asserted claims for: (1) violation of the Federal Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*; and (2) violation of the South

Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10, *et seq.*

3.      Defendant filed its Answer to Plaintiff's Amended Complaint on April 12, 2021,

and the parties engaged in discovery, including the deposition of Plaintiff's former counsel, Brian

Gambrell.

---

[1] *Cole Creek Homeowners Association Inc. VS Stacey D. Poole*, 2018-CP-46-03714.

4.      Discovery revealed Plaintiff had not suffered any damages sufficient to support a claim under the SCUTPA or to give her standing to maintain a claim under the FDCPA.

5.      During the pendency of this litigation—in at least February, March, April, May, and June, 2021—Defendant, by and through its counsel, made numerous attempts to resolve this matter via email and phone call to Plaintiff's counsel. Each attempt was unsuccessful.

6.      On or around November 9, 2021, as the culmination of Defendant's settlement attempts, counsel for Defendant sent a letter to Plaintiff's current counsel highlighting the lack of evidence to support Plaintiff's claims but also offering to settle the matter for a reasonable amount, in order to avoid additional unnecessary litigation.   Said letter is attached hereto as Exhibit "A". Defendant's counsel never received a response from Plaintiff's counsel, and the offer expired in November, 2021.   Rather than responding to Defendant's settlement offer, Plaintiff's current counsel continued to pursue this frivolous litigation—filing a Motion for Partial Summary Judgment, ECF No. 30, on December 3, 2021; a Motion for Extension of Time to Respond to Requests for Admission, ECF No. 32 on December 17, 2021; and a Response to Defendant's Motion for Summary Judgment, ECF No. 33, on December 17, 2021.   Such filings required responses from Defendant's counsel, and Defendant was forced to incur additional otherwise-unnecessary attorney's fees in order to protect its interests.

7.      On December 3, 2021, following the conclusion of discovery, Defendant filed a Motion for Summary Judgment on both of Plaintiff's claims based on a lack of evidence establishing any mental/emotional or financial damages suffered by Plaintiff as a result of receiving the two Notices of Hearing.

2

8.      On April 12, 2022, the Court granted Defendant's Motion for Summary Judgment, *see* ECF No. 40, Order Granting Def.'s MSJ, and dismissed this case with prejudice. *See* ECF No. 41, Order of Dismissal.

9.      In its Order, the Court found that Plaintiff had conceded Defendant was entitled to summary judgment on her SCUTPA claim. *See* ECF No. 40 at p. 4. *See also,* ECF No. 33, Pltf.'s Resp. to Def.'s MSJ at p. 1 (admitting Plaintiff had not suffered a monetary or property loss as a result of Defendant's actions and conceding Defendant's entitlement to summary judgment on the SCUTPA claim).

10.     Further, with regard to Plaintiff's FDCPA claim, the Court specifically found that "[Plaintiff] has not offered any evidence at all of her alleged damages—whether by deposition, affidavit, or otherwise—as is required at the summary judgment stage." ECF No. 40 at p. 8.

11.     The Court also stated, "[Plaintiff] may have been temporarily confused when she received the first notice," *id.* at p. 9, "but her fears were quickly assuaged through a simple conversation with Gambrell," *id.* at p. 7, and that "[m]ore is required…[to] establish a concrete injury of emotional distress." *Id.* at p. 9. Further, with regard to Plaintiff's receipt of the second notice of hearing, the Court found "being told by counsel that [Plaintiff] would receive it undermines her claim that her eventual receipt of it caused actionable harm." *Id.*

12.     Consequently, the Court concluded, "[c]onsidering the evidence in the light most favorable to Poole, the evidence simply does not establish that she suffered *any* injury in fact and her assertion to the contrary is not enough to establish standing. Thus, she has failed to establish that she suffered an injury that 'actually exists.'" *Id.* (emphasis added).

13.     As the prevailing party in this action, Defendant seeks recovery of its costs and attorney's fees from Plaintiff, her current counsel, and/or her former counsel.

3

14.     To date, Defendant has incurred approximately $26,455.00 in attorney's fees and $1,158.00 in costs in the defense of this action.  The attorney's fees figure is broken down as follows:

|   |   |   |
|---|---|---|
| a. | **Partner:** | $4,025 (16.1 hours at $250 per hour) |
| b. | **Associate:** | $22,180 (110.9 hours at $200 per hour) |
| c. | **Paralegal:** | $250 (2.5 hours at $100 per hour) |

15.     Defendant is informed and believes that a detailed time entry report for the fees billed by its counsel, which may contain substantive entries relating to the representation, is protected by the attorney-client privilege.  However, Defendant can provide a copy of such report to the Court for inspection during an *in camera* hearing, if necessary.

16.     Defendant incurred $1,158.00 in costs to order the deposition transcripts necessary to support its Motion for Summary Judgment.  Defendant reserves the right to provide updated figures, if necessary, at a hearing on this Motion.

17.     Defendant is entitled to recover its costs and attorney's fees pursuant to: (1) Rule 54(d), FRCP; (2) the FDCPA, 15 U.S.C. §1692.1; (3) the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. § 15-36-10, *et seq.*; (4) 28 USC §1927; and (5) *Marx v. General Revenue Corp.*, 568 U.S. 371 (2013).  As noted above, both Plaintiff's FDCPA and SCUTPA claims lack a sufficient factual basis to confer standing on Plaintiff or to support a valid claim for damages.  Plaintiff and her former counsel were aware of the state of facts before this case was filed; nevertheless, they filed this action anyway, when they knew or should have known no factual basis existed to support Plaintiff's claims.

18.     Further, despite confirmation of this in discovery, Plaintiff's current counsel refused to settle and/or dismiss this case.  Instead, he and Plaintiff unreasonably and vexatiously

4

continued pursuing Plaintiff's groundless claims, as described in Paragraph 6, forcing Defendant to incur additional attorney's fees in the defense of this action.

19. Pursuant to *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978), the undersigned is informed and believes the amount of attorney's fees sought is reasonable in light of the following:

a. **Time and Labor Expended.** Defendant's counsel has expended a total of approximately 129 hours of labor in the defense of this case. Such labor includes, but is not limited to: (1) legal research of federal law and associated case law; (2) preparation and filing of two motions to dismiss and supporting memoranda; (3) preparation and filing of an Answer; (4) preparation and service of discovery; (5) the deposition of Brian Gambrell; (6) preparation and filing of Defendant's Motion for Summary Judgment and supporting memorandum; (7) preparation and filing of other memoranda of law; and (8) case communications with Defendant and counsel for Plaintiff.

b. **Difficulty of Questions Raised and Required Skill.** This case presented relatively novel and difficult questions of law, as Defendant's counsel was unable to locate any case law directly on point and relating to notices of hearing and FDCPA violations. Further, the FDCPA is a technical area of federal law requiring an elevated level of skill, and Defendant's counsel was required to perform relatively extensive legal research in order to acquire the requisite level of competence to properly perform the legal services rendered.

c. **Opportunity Costs.** Defendant's counsels' representation in this case did not prevent them from accepting the representation of other clients in other matters.

d. **Customary Fee.** Defendant's counsel is informed and believes the average customary fee in South Carolina for work similar to the services rendered in this case is approximately $230.00 per hour.[2] Thus, Defendant's counsels' fee is in line with the average customary fee for similar services.

e. **Attorney's Expectations.** From the outset of the litigation, because attorney's fees and costs are allowable under the authority cited in Paragraph 17—and because the general facts of this case were known to the parties before the case was filed—Defendant reasonably expected to recover its attorneys' fees and costs as a result of the decisions by Plaintiff, her former counsel, and her current counsel to bring and unnecessarily prolong this frivolous action in bad faith.

---

[2] https://www.clio.com/resources/legal-trends/compare-lawyer-rates/sc.

f.    **Time Limitations.** No express time limitations were imposed in this representation, although Defendant's counsel was careful to limit the amount of time spent, where possible.

g.    **Amount in Controversy and Results Obtained.** As the FDCPA allows a successful plaintiff to recover a statutory penalty up to $1,000.00 and attorney's fees and costs, had Plaintiff prevailed in this case, Defendant's counsel estimates a total amount in controversy of approximately $31,000.00 ($30,000.00 in Plaintiff's attorney's fees through trial and $1,000.00 statutory penalty). In obtaining Summary Judgment and the dismissal of this action with prejudice, Defendant's counsel obtained a highly beneficial result for their client. *See Farrar v. Hobby,* 506 U.S. 103, 103 (1992) (holding "the most critical factor" in determining an award "is the degree of success obtained).

h.    **Experience, Reputation, and Ability.** Douglas W. MacKelcan is lead counsel for Defendant on this case. He is a Senior Partner in the firm of Copeland, Stair, Valz & Lovell, LLP and has been in practice for 15 years. He has extensive experience handling various civil litigation matters and holds an AV-Preeminent peer review rating for professional excellence from Martindale-Hubbell. Michael C. Masciale is also counsel for Defendant. He is an Associate in the firm of Copeland, Stair, Valz & Lovell, LLP and has been in practice for approximately 4 years. Despite only being in practice for a short time, he possesses considerable civil litigation experience, including successfully arguing dispositive motions in state and federal court and defending and taking key witness depositions.

i.    **Undesirability of Case.** Defendant's counsel is informed and believes that the defense of FDCPA cases like the instant case could be considered undesirable by prospective attorneys, due to the nature of the claims and the broad application courts have afforded the FDCPA in protecting consumers.

j.    **Nature and Length of Professional Relationship.** Defendant's counsel has represented it in this case since the filing of Plaintiff's Complaint on October 2, 2020. Additionally, Defendant's counsel represented it in prior litigation in 2018—*Erdogan v. Preserve at Charleston Park Homeowners Association, Inc., et al.,* 2: 18-cv-00084-RMG. Defendant was dismissed by Order of the Court granting its Motion to Dismiss, entered on June 21, 2018.

k.    **Amount of Similar Awards.** Defendant's counsel is informed and believes the amount of attorneys' fees requested is reasonable in light of similar awards in FDCPA cases. *See, e.g., Randall v. H&P Capital, Inc.,* 513 Fed.Appx. 282 (4th Cir. 2013 ($76,876.59); *Beasley v. Red Rock Financial Services, LLC,* 2016 WL 8261707 (E.D.V.A. 2016) ($33,510); *Scroggin v. Credit Bureau of Jonesboro, Inc.,* 973 F. Supp.2d 961 (E.D.Ark. 2013) ($30,905); *Kohli v. Independent Recovery Resources, Inc.,* 2022 WL 706695 (E.D.N.Y. 2022) ($46,620); *Stinson v. Hanz & Franz, LLC,* 2014 WL 12519955 (S.C.Com.Pl. 2014) ($20,700 in FLSA case).

WHEREFORE, for the foregoing reasons, in addition to any presented via supplemental memorandum in advance of a hearing on this Motion, Defendant respectfully requests this Court to order Plaintiff, her former counsel, and/or her current counsel to pay Defendant its attorneys' fees and costs incurred in the successful defense of this action, in the amounts of $26,455.00 and $1,158.00 respectively.

This 27th day of April, 2022.

Respectfully submitted,

COPELAND, STAIR, VALZ & LOVELL, LLP

40 Calhoun Street, Suite 400
Charleston, SC 29401
*dmackelcan@csvl.law*
*mmasciale@csvl.law*
Ph: 843-727-0307

By: */s/ Douglas W. MacKelcan*
DOUGLAS W. MACKELCAN
Federal Bar No.: 10058
MICHAEL C. MASCIALE
Federal Bar No.: 12944

6800376v.1

7

Enjoy Peace-of-Mind
**Knowing our outstanding warranty and service have your back if things get tough.**

- Warranted against material and manufacturing defect for five years.
- Ongoing support for the wireless magnetometer vehicle detection system, including software updates to all three components.

### 1.2.12 Warranty

- Performance shall be warranted for a period of **60 months** of the date of purchase and shall include repair or replacement of any component of the Wireless Vehicle Detection System. Failure due to workmanship, materials, and manufacturing defects shall be warranted for repair or replacement of the first 60 months of the date of purchase. The vendor shall replace any failed components within 30 calendar days of notification.
- During the warranty period, technical support shall be available from the supplier via telephone within 2 business days of the time a call is made by a user, where this support shall be provided by factory-authorized personnel or factory-authorized installers.

- During the warranty period, standard updates to the software shall be available from the supplier without charge.

Purchase Order Standard Clauses

MATERIAL AND WORKMANSHIP: Unless otherwise specifically provided in the purchase order, all equipment, material, and articles incorporated in the Work are to be new and of the most suitable grade for the purpose intended.