**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION**

| | |
|---|---|
| Stacey Darlene Poole,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Black, Slaughter & Black, P.A.,<br><br>　　　　Defendant. | )　Case No.: 0:20-cv-3499-TLW<br>)<br>)<br>)　**DEFENDANT'S REPLY TO**<br>)　**MEMORANDA OF PLAINTIFF AND**<br>)　**PLAINTIFF'S FORMER COUNSEL IN**<br>)　**OPPOSITION TO DEFENDANT'S**<br>)　**MOTION FOR ATTORNEY'S FEES AND**<br>)　**COSTS** |

NOW COMES Defendant Black, Slaughter & Black, P.A. ("Defendant"), by and through its undersigned counsel, and hereby submits this Reply to the Memoranda of Plaintiff and Plaintiff's Former Counsel in Opposition to Defendant's Motion for Attorney's Fees and Costs ("Reply"). In support of its Reply, Defendant would respectfully show this Court as follows:

**<u>INTRODUCTION AND FACTUAL BACKGROUND</u>**

Defendant obtained Summary Judgment and dismissal of this case by Order of this Court on April 12, 2022 ("Court's Order"). *See* ECF Nos. 40-41. Thereafter, Defendant filed its Motion for Attorney's Fees and Costs ("Defendant's Motion"), ECF No. 42, on April 27, 2022—within the time requirements set forth by Rule 54, FRCP. Defendant expressly incorporates the Court's Order and Defendant's Motion herein for all purposes. Plaintiff's former counsel, Brian Gambrell ("Gambrell") filed his Memorandum in Opposition to Defendant's Motion on May 20, 2022 ("Gambrell Memo"), and Plaintiff, through her current counsel, counsel filed a Memorandum in Opposition to Defendant's Motion ("Plaintiff's Memo") on the same date. To clear up any confusion created by the arguments advanced in the two memoranda, the undersigned believes it necessary to set forth a clear statement of the facts and time line of this case, which supports

Defendant's entitlement to attorney's fees and costs based on bad faith actions by Plaintiff and her counsel.

As the Court is aware, this case arises from Plaintiff's receipt of two Notices of Hearing in an underlying State Court HOA foreclosure action ("Underlying Action").[1] Gambrell represented Plaintiff in the Underlying Action until he was relieved as counsel by order of the court entered February 11, 2021. Defendant inadvertently mailed Plaintiff the first Notice of Hearing in the Underlying Action on or around **September 9, 2020**. *See* Def.'s Mtn. for S.J. (ECF No. 31) at p. 3. Shortly after receiving the notice, Plaintiff sent it to Gambrell. *See* Ex. B to Def.'s Mtn. for S.J., Gambrell Depo. at 67: 16-24. Upon receiving the 9/9 Notice, Gambrell called Plaintiff and discussed the substance of the notice with her. *Id.* at 65: 20-22. In his deposition, Gambrell testified as to his understanding of the substance of the 9/9 Notice, and he identified each statement contained therein which he believed to be inaccurate. *See id.* at 68: 19 – 73: 20.

On **September 14, 2020**, Gambrell contacted David Wilson—an attorney in Defendant's office—to notify him of Plaintiff's receipt of the 9/9 Notice and request that Defendant cease further communication with Plaintiff. *See* Ex. 2 to Amend. Compl., ECF No. 8-2. Wilson responded via email and apologized, explaining the 9/9 Notice had been sent inadvertently. *See* Ex. 3 to Amend. Compl., ECF No. 8-3. After receiving Wilson's email, Gambrell called Plaintiff, Ex. B, Gambrell Depo. at 77: 5-6, and as a result of the call, Plaintiff was aware that the 9/9 Notice had been sent to her inadvertently and that Wilson had apologized for the mistake. *See id.* at 78: 1-9.

Thereafter, Defendant inadvertently mailed an Amended Notice of Hearing to Plaintiff on **September 18, 2020** ("Amended Notice"). *See* Ex. E to Def.'s Mtn. for S.J., Affidavit of LeeAnn

---

[1] *Cole Creek Homeowners Association Inc. vs Stacey D. Poole*, 2018-CP-46-03714.

Simpson at ¶ 3. Other than containing a revised hearing date and time, as well as the addition of the word "Amended" in the caption, the Amended Notice was virtually identical to the 9/9 Notice which Gambrell had already discussed with Plaintiff. *See* Gambrell Depo. at 84: 10-19; 90: 2-7. Gambrell received the Amended Notice via the South Carolina Courts electronic filing system shortly after it was filed. *See id.* at 80: 15 – 81: 3. As a result, he was aware the Amended Notice had been sent to Plaintiff. *See id.* at 81: 4-7. Shortly after receiving the Amended Notice, and before Plaintiff received the mailed copy, Gambrell contacted Plaintiff, *id.* at 81: 23 – 82: 2; 83: 1-3. As a result of Gambrell's discussion with her, Plaintiff "was not surprised when the [Amended Notice] showed up." *Id.* at 91: 4-6.

Plaintiff did not suffer any severe mental or emotional distress, or a monetary or property loss, as a result of receiving the two Notices of Hearing, and Gambrell did not testify otherwise in his deposition. Further, Plaintiff's receipt of the Notices of Hearing did not affect her decision-making or litigation strategy regarding the Underlying Action, nor did Plaintiff take any action in response to receiving the notices, other than conveying them to Gambrell. Gambrell and Plaintiff simply waited until Plaintiff received the mailed copy of the Amended Notice to file a motion for sanctions against Defendant in the Underlying Action on September 30, 2020. *See id.* at 92: 6-17. In addition, Gambrell filed this lawsuit on Plaintiff's behalf on **October 2, 2020**—several weeks after Gambrell had discussed the substance of both notices with Plaintiff.

Defendant filed a Motion to Dismiss Plaintiff's initial Complaint on October 26, 2020 (ECF No. 6). In the Motion to Dismiss, Defendant argued, among other things, that Plaintiff's initial Complaint failed to sufficiently allege a concrete injury to Plaintiff to give her standing to maintain her claims. *See* ECF No. 6, Def.'s Mtn. to Dismiss at pp. 4-6. In response, Plaintiff—by and through Gambrell—filed an Amended Complaint on October 30, 2020 (ECF No. 8). Of

3

note, the Amended Complaint contained new allegations that "Plaintiff became extremely upset," ECF No. 8, Amend. Compl. at ¶ 2, and suffered "upset, fright, worry, and mental anguish" as a result of receiving the Notices of Hearing. *Id.* at ¶29. On February 9, 2021, the Court entered an Order (ECF No. 19) substituting Plaintiff's current counsel, Andrew Radeker ("Radeker"), as counsel of record in place of Gambrell.

As discussed in Defendant's Motion, Defendant's counsel attempted on multiple occasions throughout this case to engage Radeker in settlement discussions. *See* ECF No. 42, Def.'s Mtn. at ¶ 5. Each attempt was unsuccessful. Defendant's counsel took Gambrell's deposition on **November 2, 2021**. As noted above, Gambrell's testimony made clear that Plaintiff had not suffered any damages as a result of receiving the Notices of Hearing. Defendant's counsel emphasized this fact in the **November 9, 2021** letter sent to Radeker, which is attached to Defendant's Motion as Exhibit A. Further—in a final attempt to avoid additional litigation— Defendant's counsel conveyed a settlement offer to Plaintiff and informed Radeker that Defendant would seek recovery of its attorney's fees and costs if the offer was not accepted and Defendant was forced to expend additional time and resources in a successful defense of this case. *See* ECF No. 42-1, Ex. A to Def.'s Mtn. at p. 2.

Radeker never responded to Defendant's November 9, 2021 settlement offer. Instead, he filed a Motion for Partial Summary Judgment ("Plaintiff's MPSJ"), ECF No. 30, on **December 3, 2021**, a Motion for Extension of Time to Respond to Requests for Admission, ECF No. 32, on **December 17, 2021**, and a Response to Defendant's Motion for Summary Judgment ("Plaintiff's Response"), ECF No. 33, on **December 17, 2021** (collectively, "Plaintiff's Filings"). Plaintiff's MPSJ did not address the issue of standing at all. Further, Plaintiff's Response inaccurately stated to the Court that Gambrell testified Plaintiff was "upset and anxious as a result of receiving the

4

false and misleading hearing notices from the Defendant." ECF No. 33, Pltf.'s Resp. at p. 2. As the Court noted in its Order granting Defendant Summary Judgment, no such testimony appears in Gambrell's deposition transcript. *See* ECF No. 40, Ct.'s Order at p. 4, fn. 2. Other than the foregoing inaccurate characterization of Gambrell's testimony, Plaintiff's Response did not address the issue of standing.

To protect Defendant's interests, Defendant's counsel was forced to expend additional time and effort to respond to Plaintiff's Filings. Specifically, Defendant's counsel filed a Memorandum in Opposition to Plaintiff's MPSJ on December 17, 2021 (ECF No. 34) and a Memorandum in Opposition to Plaintiff's Motion for Extension of Time to Respond to Requests for Admission on January 6, 2022 (ECF No. 36).

## ARGUMENT

**I.    This action was filed in bad faith because Plaintiff's lack of standing was readily apparent before the commencement of this action.**

The Court should award Defendant its attorney's fees and costs incurred in the successful defense of this action because Plaintiff and Gambrell brought this action in bad faith and for no legitimate purpose. Pursuant to 15 U.S.C. § 1692k(a)(3), "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." Moreover, the Court has the inherent authority to impose sanctions where an action has been brought in bad faith. *See e.g., Marx v. General Revenue Corp.,* 568 U.S. 371 (2013). "[T]he filing of a frivolous lawsuit may demonstrate bad faith where the suit is so completely without hope of succeeding that the court can infer that the plaintiff brought the suit to harass the defendants rather than to obtain a favorable judgment." *Glick v. Koenig*, 766 F.2d 265, 270 (7th Cir. 1985).

Further, with regard to Plaintiff's SC Unfair Trade Practices Act claim, Defendant seeks recovery of its attorney's fees and costs pursuant to the *South Carolina Frivolous Civil Proceedings Sanctions Act* ("the Act"), S.C. Code Ann. § 15-36-10. The Act provides, in relevant part:

> "An attorney, party, or pro se litigant shall be sanctioned for a frivolous claim or defense if the court finds the attorney, party, or pro se litigant failed to comply with one of the following conditions: (a) a reasonable attorney ***in the same circumstances*** would believe that ***under the facts***, his claim or defense was clearly not warranted under existing law and that a good faith or reasonable argument did not exist for the extension, modification, or reversal of existing law; (b) a reasonable attorney in the same circumstances would believe that his procurement, initiation, continuation, or defense of the civil suit was intended merely to harass or injure the other party; or (c) a reasonable attorney in the same circumstances would believe that the ***case or defense was frivolous as not reasonably founded in fact*** or was interposed merely for delay, or was merely brought for a purpose other than securing proper discovery, joinder of proposed parties, or adjudication of the claim or defense upon which the proceedings are based."

S.C. Code Ann. § 15-36-10(C)(1)(a)-(c) (emphasis added). To sanction an attorney or party, the Court must find by a preponderance of the evidence that the attorney or party "engaged in advancing a frivolous claim or defense." S.C. Code Ann. 15-36-10(C)(2).

### a.      Timeliness of Defendant's Motion

As an initial matter, Defendant's Motion is timely under the Act. Gambrell contends that, pursuant to South Carolina common law, Defendant was required to file its Motion seeking sanctions under the Act within ten (10) days after the Court entered its Order Granting Defendant's Motion for Summary Judgment. *See* Gambrell Memo at p. 2. In support of this position, he cites *Pee Dee Health Care, P.A. v. Estate of Thompson*, 424 S.C. 520, 529-30, 818 S.E.2d 758, 763 (2018). However, in *Pee Dee Health Care*, the SC Supreme Court cited *Russell v. Wachovia Bank, N.A.*, 370 S.C. 5, 633 S.E.2d 722 (2006), in which it expressly held that a motion for sanctions must be filed within 10 days after notice of entry of judgment because "[g]enerally, a trial judge

6

loses jurisdiction over a case when the time to file post-trial motions has elapsed." *Id.* at 20, 633 S.E.2d at 730.

The Supreme Court's holdings in *Pee Dee and Russell* relate to Rule 59, SCRCP, which provides that the time to file post-trial motions in state court elapses ten (10) days after a party receives written notice of the entry of judgment. Accordingly, the deadline for post-judgment sanctions motions is procedural, rather than substantive. Because this case is in federal court, the Federal Rules of Civil Procedure control. Rule 54(d)(2)(B)(i), FRCP requires a motion for attorney's fees and costs to be filed "no later than 14 days after the entry of judgment." The Court entered its Order granting Defendant Summary Judgment on April 12, 2022. Pursuant to Rule 6(a)(1)(A), FRCP, the 14-day time period began on April 13. Defendant filed its Motion on April 27, 2022. Therefore, Defendant's Motion was timely for all purposes, including for seeking sanctions under the Act.

**b. Bad Faith**

Gambrell advances three main arguments in opposition to Defendant's Motion: (1) that Plaintiff's Amended Complaint Survived Defendant's Motion to Dismiss, *see id.* at pp. 3-4, 11, thereby absolving this action from any potential frivolity[2]; (2) that discovery did not commence

---

[2] First, a Motion to Dismiss under Rule 12(b)(6) tests the legal sufficiency of the allegations contained in the Complaint, not whether such allegations have any factual support. The establishment of prima facie claims in the Complaint is not dispositive of the issue of sanctions. *See Blue v. U.S. Dept. of Army*, 914 F.2d 525, 536 (4th Cir.1990) ("Clearly, if plaintiff has no evidence whatsoever…the continued litigation of plaintiff's case can be frivolous despite the existence of a prima facie case."). Second, Defendant argued in its first Motion to Dismiss (ECF No. 6) that Plaintiff had failed to allege sufficient facts to show she had standing to sue. It is noteworthy that, in response to this argument, Gambrell filed an Amended Complaint alleging for the first time that Plaintiff had suffered mental and emotional distress due to receiving the Notices of Hearing. As Gambrell's own testimony shows, such factual allegations were directly contrary to his knowledge of the facts at the time. This constitutes a clear violation of Rule 11, FRCP and was likely a bad faith attempt to avoid dismissal of this case at the pleadings stage.

until after Gambrell was relieved as Plaintiff's counsel, *see id.* at p. 4; and (3) that the court cannot use the information revealed during discovery in a hindsight analysis of Gambrell's actions in this case. *See id.* at 5-7. In the typical scenario in which an attorney is retained to pursue claims on behalf of a client without complete knowledge of all material facts, such arguments may carry some weight.

However, these arguments are unpersuasive in this particular case for one important and glaring reason: Gambrell was Plaintiff's counsel in the Underlying Action and had direct knowledge of all relevant facts **before** he filed this lawsuit. He testified to such knowledge in his deposition. Specifically, Gambrell testified that: (1) he knew many of the statements contained in the 9/9 Notice were false or inaccurate, *see* Gambrell depo. at 68: 19 – 73: 20; (2) he discussed the substance of the 9/9 Notice with Plaintiff shortly after she received it, *see id.* at 65: 20-22; (3) after a conversation with David Wilson, Gambrell spoke with Plaintiff and she was made aware that the 9/9 Notice had been sent to her inadvertently and that Wilson had apologized for the mistake. *See id.* at 77: 5-6, 78: 1-9; (4) he received the Amended Notice via the SC Courts Electronic Filing System before Plaintiff received the mailed copy, and he contacted her to discuss it, *see id.* at 80: 15 – 83: 3; and (5) as a result of Plaintiff's discussion with Gambrell, Plaintiff "was not surprised when the [Amended Notice] showed up." *Id.* at 91: 4-6.

Clearly, these facts are wholly insufficient to establish that Plaintiff suffered a concrete injury in fact required to give her standing to maintain her claims. All of the foregoing events—in which Gambrell was a direct participant—occurred before he filed this lawsuit. The facts of this case have never changed. As a result, Gambrell knew Plaintiff had not suffered any concrete injury before he initiated this lawsuit. Consequently, he either knew or, as an experienced attorney, should have known Plaintiff did not have standing to maintain either of her claims against

8

Defendant.  Standing to sue is a constitutionally-required element of every claim brought in federal court.  It is not a novel concept.  An essential element required to establish standing is an injury in fact suffered by the plaintiff.  *See, e.g., Spokeo, Inc. v. Robins,* 136 S.Ct. 1540, 1547-48, 194 L.Ed.2d 635 (2016) ("Injury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'").

At the time he filed this action, Gambrell had been in practice for twenty (20) years, *see* Gambrell depo. at 11: 2-5, and he had been licensed in federal court for nineteen (19) years.  *See id.* at 11: 8-10.   Further, Gambrell had significant prior experience with the FDCPA, the South Carolina Unfair Trade Practices Act, and HOA litigation.  Specifically, he testified that during the five (5) years he worked at the Law Firm of Jason E. Taylor, he "sued a lot of HOAs," *id.* at 15: 10, attempted a class action lawsuit relating to HOA foreclosures, *see id.* at 17: 5-10, and asserted claims under the Unfair Trade Practices Act in "[j]ust about every counterclaim involving HOAs." *Id.* at 17: 21-22.

He also worked at the law firm of Rogers, Townsend & Thomas for a year and a half, *see id.* at 19: 15-23, during which time he "did exclusively homeowners' association law and particularly homeowners' association law collections." *Id.* at 19: 25 – 20: 2.  Further, Gambrell testified that he "became…the FDCPA compliance person," "looked over all of our stuff," "kept up with any changes to the FDCPA," and was responsible for "making sure that we had…a bona fide procedure to avoid [FDCPA violations], [and] that we were actually following it." *Id.*  at 24: 12 – 25: 2.  Based on his extensive prior experience, it is almost certain he was aware, or he should have been aware, of the required elements necessary to support viable FDCPA and Unfair Trade Practices Act claims.

Additionally, to support her SC Unfair Trade Practices Act claim, Plaintiff was required to prove, among other elements, that she suffered monetary or property loss as a result of Defendant's unfair or deceptive act(s). *RFT Management Co., L.L.C. v. Tinsley & Adams L.L.P.*, 399 S.C. 322, 337, 732 S.E.2d 166, 174 (2012). It is clear from Gambrell's deposition testimony that, before he filed this action, he knew Plaintiff had suffered no such loss as a result of receiving either of the Notices of Hearing. Indeed, Plaintiff even conceded Defendant's entitlement to summary judgment on this issue in her Response. Therefore, Gambrell's conduct is subject to sanctions under the Act because a reasonable attorney under the same circumstances (i.e., with Gambrell's prior knowledge) would believe that under the facts of this case, Plaintiff's SC Unfair Trade Practices Act claim was clearly not warranted under existing law, and that her claim was frivolous as not reasonably founded in fact.

c.     **Improper Purpose**

It is clear from the foregoing evidence that Gambrell and Plaintiff brought this lawsuit in order to harass Defendant and in an attempt to gain an improper advantage in the Underlying Action. As discussed in more detail in Defendant's Motion for Summary Judgment—which is part of the record in this case and is incorporated herein in full—Plaintiff was put at a significant procedural and evidentiary disadvantage as a result of Gambrell's failure to timely respond to the Requests to Admit which Defendant had previously served on him. *See* Def.'s MSJ at p. 16. Defendant filed a Motion for Summary Judgment in the Underlying Action and largely supported the motion with Plaintiff's resulting admissions. Despite this, other than filing a memorandum in opposition to the motion, Gambrell failed to present any competent evidence or conduct further discovery to effectively oppose the motion. *See* Gambrell depo. at 46: 22 – 47: 17.

10

However, he did take the time to file a motion for sanctions against Defendant in the Underlying Action, and then to file this action, shortly after Plaintiff received the Amended Notice. In the absence of a concrete injury to Plaintiff, which Gambrell knew was the case before he filed this lawsuit, the only reasonable inference which can be drawn is that Plaintiff brought her FDCPA and Unfair Trade Practices Act claims in bad faith, to harass Defendant, and in an attempt to gain an improper advantage and/or compensate for Plaintiff's significant procedural disadvantage in the Underlying Action.

**II.    Plaintiff, through her current counsel, unreasonably continued this frivolous action.**

In addition to the foregoing grounds for sanctions against Gambrell and Plaintiff, which are expressly incorporated herein to the extent applicable against Radeker, Radeker should also be sanctioned pursuant to 28 U.S.C. § 1927. Under this section, "[a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

A court has discretion to impose § 1927 sanctions when an attorney has acted in an "objectively unreasonable manner" by engaging in "serious and studied disregard for the orderly process of justice;" pursued a claim that is "without a plausible legal or factual basis and lacking in justification;" or "pursue[d] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Jolly Group, Ltd. v. Medline Industries, Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (internal citations omitted). The Seventh Circuit has also interpreted § 1927 to "impose a continuing duty upon attorneys to dismiss claims that are no longer viable." *Id.*

Similarly—although stated in slightly different terms—the Fourth Circuit has held that "[a] court considering the propriety of a § 1927 award must focus on the conduct of the litigation and not on its merits." *DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir.1999). An award of fees under § 1927 requires "a finding of counsel's bad faith as a precondition to the imposition of fees." *Nystrom v. TREX Co.*, 424 F.3d 1136, 1141 (Fed.Cir.2005) (*citing Chaudhry v. Gallerizzo,* 174 F.3d 394, 411 n. 14 (4th Cir.1999)). Bad faith may be shown, and sanctions are appropriate, when a plaintiff and their attorney engage in "pursuing a case after it becomes clear that the case is without merit." *Blue v. U.S. Dept. of Army*, 914 F.2d 525, 537 (4th Cir. 990) (*citing Christiansburg Garment Co. v. EEOC,* 434 U.S. 412 (1978)). Sanctions are appropriate where a "plaintiff is found to have brought or *continued* such a claim in bad faith." *Id.* (emphasis in original). "[D]ogged pursuit of a colorable claim becomes actionable bad faith once the attorney learns (or should have learned) that the claim is bound to fail." *Id.* (*citing In re TCI, Ltd.*, 769 F.2d 441, 445 (7th Cir.1985).

Here, Radeker either knew or should have known that Plaintiff's claims lacked any factual or legal support by around February 9, 2021—the date on which he was substituted in as counsel of record for Plaintiff. Gambrell testified in his deposition that he "gave [Radeker] a complete copy of [Plaintiff's] file since he took over the representation." Gambrell depo. at 30: 12-13. Further, "the only documents that were in that file would be privileged information such as my ***contemporaneous notes, my research***, which I would fully expect [Radeker] to have already designated as attorney-client material." *Id.* at 30: 14-18 (emphasis added). Therefore, Radeker had access to Gambrell's pre-existing, direct knowledge of the operative facts of this case at the time he assumed the representation of Plaintiff. He knew, or through reasonable inquiry should have known, that Plaintiff had not suffered any injury in fact—including mental or emotional

12

distress and/or monetary or property loss—as a result of receiving the Notices of Hearing. *See Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 393 (1990) (attorneys are under a duty to conduct a reasonable inquiry and determine that any papers filed with the court are ***well grounded in fact***, legally tenable, and "not interposed for any improper purpose."). With the knowledge that Plaintiff's claims lacked sufficient factual support, Plaintiff and Radeker could have dismissed or settled this case around February, 2021, thereby saving both Plaintiff and Defendant a year's worth of unnecessary litigation, attorney's fees, and costs.

Further—assuming for the sake of argument that Radeker did not and should not have known Plaintiff had no viable claims as of February 2021—it is indisputable he had actual knowledge of this fact following Gambrell's deposition on November 2, 2021. Defendant's counsel's November 9, 2021 letter to Radeker reinforced this point and put him on notice that Defendant would seek recovery of its attorney's fees and costs if he did not dismiss the case and Defendant was required to proceed with additional litigation in order to resolve it.[3]

Radeker apparently ignored Defendant's counsel's letter, as he never responded to it, and Defendant's settlement offer ultimately lapsed. Instead—despite being fully aware that Plaintiff's claims were not viable—Radeker proceeded to file Plaintiff's Filings more than one month after the Gambrell deposition, and Defendant's counsel was required to prepare and file responses thereto which would have been unnecessary had Plaintiff dismissed this case in November, 2021. Similarly, Defendant's Motion for Summary Judgment and supporting Memorandum would also

---

[3] In response to Plaintiff's Rule 408, FRE argument—to the extent the Rules of Evidence apply in this situation—Defendant is not offering the November 9, 2021 letter as evidence to prove the validity or amount of Plaintiff's claims, or the validity or amount of Defendant's claim for attorney's fees and costs. Defendant offers the letter for the purpose of demonstrating that by no later than November 9, 2021, Radeker was aware of: (1) the fatal weaknesses of Plaintiff's claims; and (2) that Defendant would seek recovery of its attorney's fees and costs if it was forced defend itself in additional unnecessary litigation.

have been unnecessary if Plaintiff had dismissed this case—or potentially, if Radeker had at least responded to Defendant's settlement offer—in November, 2021.  Therefore, by failing to respond to Defendant's counsel and by continuing to litigate claims in this case which he knew or should have known were meritless and bound to fail, Radeker unreasonably and vexatiously multiplied the proceedings in bad faith and forced Defendant to incur additional, otherwise unnecessary attorney's fees and costs to defend its interests.  Therefore, he should be personally responsible for Defendant's fees and costs.

While Defendant's counsel has not located a requirement for an affidavit of attorney's fees in the Federal Rules of Civil Procedure, and he believes Defendant's Motion alone is sufficient under the Rules, the undersigned will be glad to submit one in advance of a hearing on Defendant's Motion if the Court so requests.

## CONCLUSION

The evidence in this case demonstrates that Plaintiff and her counsel brought and unreasonably refused to resolve and dismiss this frivolous litigation, when they knew and/or should have known that Plaintiff's claims lacked the necessary factual and legal support to be viable.  This is sufficient to establish bad faith on the part of Plaintiff and her counsel.  Therefore, pursuant to (1) Rule 54(d), FRCP; (2) the FDCPA, 15 U.S.C. §1692.l; (3) the South Carolina Frivolous Civil Proceedings Sanctions Act, S.C. Code Ann. § 15-36-10, *et seq.*; (4) 28 USC §1927; and the Court's inherit sanctioning authority, Defendant respectfully requests this Court to enter an Order requiring Plaintiff, her current counsel, and her former counsel to pay Defendant's attorney's fees and costs incurred in the defense of this groundless action.

*[SIGNATURE PAGE TO FOLLOW]*

14

This 27th day of May, 2022.

Respectfully submitted,

COPELAND, STAIR, VALZ & LOVELL, LLP

By:     *s/Douglas W. MacKelcan*

40 Calhoun Street, Suite 400          DOUGLAS W. MACKELCAN
Charleston, SC 29401                      Federal Bar No.: 10058
*dmackelcan@csvl.law*                   MICHAEL C. MASCIALE
*mmasciale@csvl.law*                    Federal Bar No.: 12944
Ph: 843-727-0307

6819137v.1

15